,(31 App. Div. 52.)

## LUXEMBURGER TUCHFABRIKEN v. MEYER.

(Supreme Court, Appellate Division, First Department. June 17, 1898.)

1. SALE—ACTION FOR PRICE—EVIDENCE.

In an action for goods sold and delivered there was evidence on behalf of the plaintiff that the sale was absolute, while the defendant, admitting the receipt of the goods, testified to an agreement that they were to be sold by him on account of the plaintiff. It appeared from exhibits in evidence that, in the correspondence between the parties, defendant had never set up this claim as to the goods in question, and that the plaintiff had insisted that the sales were absolute. *Held*, that the evidence warranted the finding that the defendant had failed to sustain the burden of showing affirmatively that the transactions were not absolute sales.

2. PAYMENTS—EVIDENCE TO ESTABLISH.

Where the dealings between parties to an action for goods sold have amounted to a considerable sum, and extended over a long time, it is necessary for the defendant, who sets up the defense of payment, to show that his payments equal the whole sum which the dealings show him indebted for, or that they were made to apply upon the particular goods for which a recovery is sought.

Appeal from judgment on report of referee.

Action by the Luxemburger Tuchfabriken against Hugo Meyer. From a judgment entered on report of referee, defendant appeals. Affirmed.

Argued before BARRETT, RUMSEY, O'BRIEN, and McLAUGH-LIN, JJ.

A. Blumenstiel, for appellant.

W. C. Beecher, for respondent.

RUMSEY, J. The action was brought to recover for a quantity of goods alleged to have been sold and delivered by the plaintiff to the defendant at various times from the 19th day of December, 1888, until the 27th of January, 1890. That the goods were shipped by the plaintiff to the defendant, and received by him at the times alleged in the complaint, was admitted, and there was no dispute as to their value. The answer alleged that some of the goods were shipped by the plaintiff to the defendant upon consignment, and some were ordered by the defendant; that all of them were to be sold on account of the plaintiff. It further alleged that it was agreed and understood that the only goods which were to be considered as purchased were those which were specially ordered from the defendant by merchants, and which orders the defendant was to, and did, forward to the plaintiff with the understanding that, if the goods were not taken by the people who ordered them, they were to be considered as consigned merchandise. The answer also alleged substantially that the goods had been paid for by the defendant. The referee found against the defendant as to both of these issues, and directed judgment to be entered in favor of the plaintiff for the amount claimed, with interest, and from that judgment this appeal is taken. Upon the trial it was shown by the plaintiff that the goods sued for were ordered by the defendant, and were shipped in accordance with the orders. The invoices of the goods were put in evidence and received, and appear to

be in the ordinary form of invoices of goods sold upon orders to be paid for absolutely. The receipt of the goods by the defendant was admitted, and, that having been done, the plaintiff rested. The defendant thereupon undertook to establish the defenses on which he relied. He did not deny having ordered the goods, and it is evident that the burden was upon him of showing that the contract between the parties was something different from an ordinary contract of sale which would be inferred from the transaction as the plaintiff had made it appear. The defendant undertook to show that the contract was as he alleged it in his answer. He testified that the arrangement between himself and the plaintiff was that goods were sent upon consignment to him to be sold on account of the plaintiff, and that other goods were sent upon orders which he had received from his customers, and forwarded to the plaintiff upon the understanding that if the customers refused to take the goods they were not to be considered as sold absolutely, but that after such refusal he was to hold them as consignment goods, and sell them, and account for the proceeds in the same manner as though they had been consigned to him originally. This testimony of the defendant was contradicted by two of the directors of the plaintiff corporation, who were examined upon commission, and also by another witness, who had been a bookkeeper in the employment of the plaintiff, but who had left its employment before he was examined. Each of these persons seemed to be familiar with the transactions between the plaintiff and the defendant, and each one testified substantially that the shipments of goods to the defendant were made in two ways, some upon consignment and others upon absolute orders sent by the defendant to the plaintiff for the purchase of goods. They testified that the goods which were shipped upon orders were delivered on shipboard at Antwerp, and thence went forward at the defendant's expense and risk, and that the goods which were shipped upon consignment were shipped in the ordinary way to be sold for account of the plaintiff. But each one of these witnesses denied positively that any goods were shipped upon conditional sales in the manner testified by the defendant. This was substantially all the oral and direct evidence upon the subject of the manner of dealing between the parties. A large number of exhibits were introduced, however, by each party, consisting of letters, orders, invoices, accounts of sale, and accounts current which passed between the parties from time to time, and from these papers each party claims that his own version of the transaction is corroborated and established. After a careful examination of these papers, we are unable to say that the version of either party is satisfactorily corroborated by them. One thing, however, clearly appears: there is no claim whatever in the papers on the part of the defendant, from the beginning to the end, that any goods were delivered to him upon such conditional sales as he has alleged in his answer and testified to. No mention is made by him of any such sales. It is quite true that he does state in several of his letters that his customers have refused some of the goods, and that thereafter he will hold those goods as consigned, and sell them for the account of the plaintiff; but he does not make any such claim as though it was the result of an un-

derstanding that he might do so, but as a right which he had acquired because the goods did not correspond with the orders which he had sent; and in almost every case that claim, when it is received by the plaintiff, is rejected by them, for the reason as they say that the goods are sold absolutely to him, and they decline to be responsible for the action of his customers in refusing to take them; and after that answer had been received by the defendant, and when it would seem that, if he had a contract which entitled him to hold the goods thus refused upon consignment, he would insist upon his contract, we find nothing whatever said about it by him, and no such insistence made. The absence of this claim anywhere in this correspondence, even after the relations between the parties had become strained, is quite suggestive that no such understanding was had as was claimed by the defendant. It is apparent from the correspondence that the plaintiff insisted that portions of these goods were sold absolutely to the defendant, and it would seem from a pretty careful reading of the papers that this claim was made whenever and as often as the plaintiff was called upon to assert its rights under such a contract. It is quite true that upon an examination of the accounts of sales rendered from time to time by the defendant to the plaintiff there appear in them sales of the identical goods which it is alleged were sold absolutely, and many of which are sought to be recovered for in this action; but these accounts of sales also cover many other goods as to which there can be no question that they were not shipped upon consignment. Ordinarily, of course, if goods were shipped upon a claim that they were sold absolutely to the buyer, and he should render an account of sales of those goods as though they had been received by him to be sold on account of the vendor, and that account should be received without objection, it would be evidence of considerable weight tending to show that he was right in his contention, but it would not be conclusive. It is to be noticed, as bearing upon the weight to be given to these accounts, that while they were received without objection so long as the price at which the goods were returned was the net price at which they were invoiced by the plaintiff to the defendant, yet in every case where the price returned as received for the goods was less than the invoice price the plaintiff rejected the account, insisting that these particular goods were sold and were to be paid for at the invoice price. Because of these facts we are inclined to think that the accounts of sales rendered by the defendant to the plaintiff are not to be held to establish the fact that all the goods included in them were shipped upon consignment. The defendant, in his testimony, conceded that many of the goods were not shipped upon consignment, but were shipped upon what he calls conditional sales; and yet it does not appear anywhere in the papers which he presents that he received any of the goods in any other way than upon consignment, and he does not claim to have accounted for one dollar's worth of goods which were shipped to him upon what he calls conditional sales. This failure to discriminate between the two kinds of shipments which he testifies were made to him from time to time, and the inclusion of all of them in the accounts of sales, goes far to weaken any inferences which might otherwise be drawn

in favor of the defendant from what is said in the papers. It must not be forgotten that the question to be determined by us is whether, upon the whole case, there was sufficient evidence to warrant the referee in finding for the plaintiff, that the goods were actually sold to the defendant, and that the burden of proving that the contract between the parties was something different than that evidenced by the orders and invoices was upon the defendant; and unless, upon a careful consideration of the testimony, it is apparent that the referee erred in that regard, his conclusion must be adopted. Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751.

We have examined this testimony with very great care, in view of the earnest argument of the learned counsel for the appellant, and we are not able to say upon the whole case that the defendant has borne the burden of the case, or that the referee was not correct in his conclusion that the goods sought to be recovered for in this action were actually sold to the defendant, and were not shipped to him to be sold upon commission. But the defendant insists that he has paid to the plaintiff a larger amount of money than is sufficient to cover the purchase price of these goods and of all the other goods which appear from the papers to have been shipped by the plaintiff to him. The fact that certain payments were made is not disputed. These payments amounted to 75,833 marks and 33 pfennigs. They were made at various times, commencing on the 6th of March, 1888. The defendant claims that at the time when these payments began to be made he was indebted either not at all or to a very small amount, and therefore that the payments must have been made to apply upon the goods which were sued for in this action, and which were subsequently shipped to him. Where payment is pleaded, the burden of proof is upon the defendant to establish it. Where, as in this case, the dealings between the parties have amounted to a considerable sum, and extended over a long time, it is necessary for the person alleging that he has paid for goods received by him to show either that his payments amount to a sum as great as the whole sum which the dealings show him to be indebted for, or that they were made to apply upon the particular goods which are sought to be recovered for. The dealings between the parties commenced in 1884, but down to the 7th of December, 1887, they were quite small in amount, and the goods received by the defendant seem to have been paid for. Dealings of magnitude began apparently on the 7th of December, 1887, and there appear in the case six invoices of goods inclosed in fifteen cases, shipped from that date down to the 2d of February, 1888. These cases were numbered separately. In various accounts of sales rendered from time to time by the defendant to the plaintiff the goods in each case appear to have been accounted for separately, and the number of the case is returned with the account of sales. No invoices of goods appear in the case from the 2d of February, 1888, to the 17th of December of the same year, and no invoices before February 2, 1888, are put in evidence, except the six above referred to, including the fifteen cases of goods. Between the 31st of March, 1888, and the 15th of December in the same year, three accounts of sales were rendered by the defendant to

the plaintiff. An examination of these accounts shows that there are included in it, and accounted for as sold, goods out of many cases bearing different numbers than those included in the six invoices before that time rendered, so that it is necessarily to be inferred that those six invoices do not, by any means, represent all the goods that were shipped by the plaintiff to the defendant or received by him before the first payment was made by the defendant to the plaintiff on his account. That payment was made on the 8th day of March, 1888, and amounted to 15,000 marks. The total amount of goods received by the defendant at that time does not appear, nor is there anything to show the total amount of sales made up to that time by the defendant on account of the plaintiff. The total value of the goods in the six invoices is something over 27,000 marks, but it is quite apparent, as has been stated, that goods to a considerably greater amount were at that time in the hands of the defendant, either upon absolute sales or to be sold upon consignment. It is quite clear, therefore, that the payment of 15,000 marks on the 8th day of March, 1888, upon goods received before then, is not likely to have been made upon the goods sued for in this action, none of which were ordered until after the middle of October, 1888. The same may be said with regard to the second payment of 20,000 marks on the 2d of September, 1888. At that time the goods sued for had not been ordered, and, in the nature of things, there is no reason to suppose that the payment would be made to apply upon goods which had not yet been ordered, and some of which had not even been manufactured. Still less can it be said that this payment of 20,000 marks was not made on account of goods already sold, for there is nothing to show that the goods received by the defendant down to that time did not amount to more than the money actually paid. Even if this was an advance upon consigned goods which had not yet been sold, it could not be made applicable as a payment upon these goods if they were sold outright to the defendant; and if goods were not subsequently sold of a value sufficient to cover the advances and expenses, the defendant could get no benefit for the deficit in this action unless it had been pleaded as a counterclaim, because, if it was an advance upon consigned goods, it certainly was not a payment upon goods ordered subsequently, and subsequently delivered. It appears that on the 21st day of December, 1888, 20,000 marks further were paid to the plaintiff and another payment of 20,000 marks was made on the 9th of May, 1890, but these two payments were expressly made upon account of consigned goods, and therefore they could not be applied as a payment upon goods which had been sold. With regard to the payment of the 21st of December, 1888, it is to be noticed that this payment was made before the first shipment of the goods involved in this action was made; and therefore, if those goods were sold, it clearly could not be a payment on account of them. But that payment and the payment of May were clearly made, as they purported to be, not for goods sold, but upon goods which had been consigned, and they necessarily cannot be applied as a payment for these goods, but the defendant could only get the benefit of them by a counterclaim if he so alleged it and made it appear that he had not then, and did not afterwards, sell

sufficient of the goods consigned to him to reimburse him for these
two amounts. In nearly all the invoices the number of packages is
stated, and each package has a separate number. In each account
of sales the number of the package from which goods have been sold
is stated. The goods sought to be recovered for in this action were
shipped at eleven different times, and are covered by eleven different
invoices. In seven of these invoices the number of packages and
the number of each package is stated. In four of them that does
not appear. In the seven in which the numbers are given there
are seventeen packages, of which eight were shipped upon the order
of Mr. Felix Meyer, and are conceded to have been consignment
goods. The other nine are claimed to have been sold absolutely.
In the six invoices of shipments from the 7th of December, 1887,
until the 2d of February, 1888, were contained fifteen packages
and the number of each one is given in the proper invoice. No
other shipments than those contained in these invoices are shown,
but in the account of sales we find that the numbers of forty-one
packages are given, and one package is mentioned as in bond,
but no other is made of it. Eight of the packages mentioned in
the six invoices from the 7th of December, 1887, to February 2, 1888,
are not mentioned in the accounts of sales. Of the forty-one pack-
ages mentioned by their numbers in those accounts, thirty-three are
not included in any invoice put in evidence in this action, but four of
those invoices do not mention the numbers of the cases. It is prac-
tically impossible, however, that the thirty-three cases which do not
appear on the other invoices should be included in these four, because
the values of the goods mentioned in these invoices clearly show that
they could not include so large a quantity. It is therefore evident
from this that many more goods were shipped to the defendant than
are included in the invoices which are in evidence, and the value of
these goods is considerably more than the amount of the payments
which have been made. No reason is shown why these particular
payments, which are clearly much less in amount than the value of
the goods, should be credited to the defendant on account of the
goods sued for in this action, in preference to any other goods. It is
quite clear that the other goods not sued for were much greater in
value than those which are included in this suit, and the defendant is
not entitled to have credit upon the goods in suit unless he makes
it appear either that they were paid upon these goods, or that the
payments were sufficient to reimburse the plaintiff for all the goods
which he delivered to the defendant. In the absence of any proof of
that kind, the referee was not called upon to credit the defendant
with the amounts paid upon the price of these goods. Especially is
this so in view of the fact, which has been adverted to before, that
the first 35,000 marks was paid long before these goods were ordered,
and the last 40,000 were paid particularly to apply upon consigned
goods.

It is quite true that the defendant claims that his accounts current
which were sent from time to time to the plaintiff show that the
plaintiff was indebted to him for advances, but those accounts current
are not presented in full. There is given in the case only a statement

that as the result the plaintiff was indebted to the defendant in a certain sum. How that indebtedness arose, we are not able to discover. Whether it was the result of crediting the defendant with these 75,000 marks in addition to the duties and other expenses which he paid for the plaintiff is not made to appear, nor does it appear how much of the goods in his hands had been sold at the time when the different accounts current were rendered, so that the mere statement that at a particular time the plaintiff was shown to be indebted to the defendant in a sum of money affords no light upon the question whether the particular goods had been paid for or not, in the absence of anything showing what goods were included in the accounts current, or what charges of payments or advances were made against the plaintiff in them. When it had been made to appear that this large amount of goods had been shipped to the defendant, it was for him to say that the payments which he made were more than sufficient to cover the sums which he was bound to account for, or that the payments were made to apply upon the particular goods sued for. No such proof is made to appear in the case. There is a statement of the goods in possession of the defendant for account of the plaintiff on the 1st of July, 1893. That statement contains very little information as to the value of these goods. It gives only the numbers of the cases, and it is apparent from the comparison with the accounts of sales that the goods to a greater or less amount had been previously sold out of nearly all of these cases. The whole case of the defendant upon the fact of the payments leaves the matter involved in obscurity, and it is utterly impracticable to gather from all the evidence whether payments made were sufficient to cover goods sold, or upon what goods they were made to apply. Upon that branch of the case also the defendant, having the burden of showing the payment, has failed, and the referee was correct in his conclusion that that defense was not established.

The judgment, therefore, must be affirmed, with costs. All concur.